**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORLIN PANOVSKI,<br><br>Plaintiff,<br><br>vs.<br><br>INPIXON, NADIR ALI, KAREEM M. IRFAN, TANVEER A. KHADER, WENDY LOUNDERMON, and LEONARD A. OPPENHEIM,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Orlin Panovski ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Inpixon ("Inpixon" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

- 1 -
COMPLAINT

to merge with XTI Aircraft Company ("XTI" or "Parent"), through merger vehicle Superfly Merger Sub Inc. a wholly owned subsidiary of Inpixon ("Merger Sub") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed merger transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a July 25, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").

3. Under the terms of the Merger Agreement, each existing share of XTI common stock will be converted into the right to receive newly issued shares of Inpixon common stock. Post-close, current Inpixon stockholders are expected to own only approximately 40% of the Company.

4. After completion of the merger, Inpixon will change its corporate name to "XTI Aerospace, Inc" and it will trade under the symbol "XTIA."

5. On August 14, 2023, the Company filed a Form S4 attaching the Registration Statement (the "Registration Statement") with the SEC in support of the Proposed Transaction.

6. The Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Inpixon and XTI, provided by Inpixon management to the Board and the Board's financial advisors Gemini Valuation Services, LLC ("GVS") and Maxim Group LLC ("Maxim Group"); (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by GVS and Maxim Group, if any, provided to the Company and the Board.

7. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

8. Plaintiff is a citizen of Bulgaria and, at all times relevant hereto, has been a Inpixon stockholder.

9. Defendant Inpixon operates as an indoor intelligence company in the United States and internationally. The Company is incorporated in Nevada and has its principal place of business at 2479 E. Bayshore Road, Suite 195, Palo Alto, CA 94303. Shares of Inpixon common stock are traded on the Nasdaq Stock Exchange ("Nasdaq") under the symbol "INPX".

10. Defendant Nadir Ali ("Ali") has been a Director of the Company at all relevant times. In addition, Defendant Ali serves as the Company's Chief Executive Officer ("CEO").

11. Defendant Kareem M. Irfan ("Irfan") has been a director of the Company at all relevant times.

12. Defendant Tanveer A. Khader ("Khader") has been a director of the Company at all relevant times.

13. Defendant Wendy Loundermon ("Loundermon") has been a director of the Company at all relevant times.

14. Defendant Leonard A. Oppenheim ("Oppenheim") has been a director of the Company at all relevant times.

15. Defendants identified in ¶¶ 10-14 are collectively referred to as the "Individual Defendants."

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

17. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

19. Inpixon operates as an indoor intelligence company in the United States and internationally. Inpixon's real-time location solutions and technologies help organizations enable smarter, safer and more secure environments, achieve higher levels of productivity and performance, and drive a more connected work environment.

20. In a press release on March 20, 2023 for the financial results of 2022, the Company highlighted its performance results and financial success.

21. Speaking on the results, Defendant and CEO Ali stated, "We completed 2022 with a 21% increase in revenue. We also implemented initiatives to reduce our operating expenses and overhead costs and remain actively committed to pursuing meaningful opportunities that will provide our shareholders with additional value." He further stated: "Inpixon also continues to be recognized as an industry leading provider for indoor location services. . . Moving forward into 2023, we will continue to focus on accelerating the growth of our real-time location system (RTLS) business and further penetrating the market which is projected to reach $12.7 billion by 2026, a CAGR of 26.5%, according to research firm Markets and Markets.

22. Despite this upward trajectory, the Individual Defendants have caused Inpixon to enter into the Proposed Transaction without providing requisite information to Inpixon stockholders such as Plaintiff.

**The Proposed Transaction**

23. On July 25, 2023, Inpixon and XTI issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> PALO ALTO, Calif., July 25, 2023 /PRNewswire/ -- Inpixon® (Nasdaq: INPX), a leading provider of real-time location systems ("RTLS"), today announced it has entered into a definitive merger agreement with XTI Aircraft Company ("XTI"), an aviation company developing the TriFan 600, a fixed-wing, vertical takeoff and landing (VTOL) aircraft. The enterprise value of XTI was ascertained by an independent financial advisory firm to be within the range of $252 million and $343 million.[1] XTI's valuation was determined after comparison with certain public companies with similar business models to XTI in the air travel/VTOL segment of the aviation industry, with an average enterprise value of approximately $1.6 billion. If completed, the merger will result in a combined publicly traded company that will focus on advancing the TriFan 600 to market, as well as continuing to offer Inpixon's real-time location systems technology to manufacturing and warehousing facilities for streamlined operations, greater efficiency, and improved safety. The companies will launch a merger information portal at xti-inpx-merger.com where interested parties can keep abreast of transaction news.

David Brody, founder and chairman of XTI Aircraft Company, commented, "We're excited to announce this transaction, which we believe will be a transformative event for both companies. We believe that the TriFan 600 airplane will revolutionize point-to-point air travel by combining the comfort, speed, and range of similar conventional business aircraft with the flexibility, convenience, and pinpoint transportation of a helicopter. In 2019, we successfully conducted multiple hover tests of our two-thirds scale unmanned proof-of-concept configuration of the TriFan. After we close, we expect to be in a strong position to expand our operations, work toward building our first full-scale piloted test aircraft, and continue our efforts toward achieving FAA certification and commercial production."

Scott Pomeroy, XTI CFO and board member added, "We believe this merger, which results in XTI's listing on NASDAQ, is the logical next step to give XTI access to the broader public capital markets following its earlier Regulation CF and Regulation A offerings. We further believe that our future capital plans are supported by the existing strong demand for the TriFan 600, evidenced by the more than 700 conditional pre-orders under a combination of aircraft purchase agreements, non-binding reservation deposit agreements, and options. These pre-orders represent potential gross revenues of approximately $7.1 billion, based on our current list price of $10 million per aircraft assuming the company is able to execute on the development program for the TriFan, secure FAA certification, and deliver these aircraft."

Nadir Ali, CEO of Inpixon, stated, "We believe that with XTI's experienced executive team and the disruptive potential of the TriFan 600 for the aviation industry, this transaction has the potential to unlock value for Inpixon shareholders. We anticipate that this transaction will not only aid in the growth of XTI but will also enable Inpixon shareholders to own a meaningful interest of approximately 40% of the outstanding common stock of the combined company with a higher valuation in a multibillion-dollar market."

**About the Transaction**
The merger agreement provides for XTI shareholders to own approximately 60% of the outstanding shares of common stock of the post combination company, and Inpixon shareholders to retain approximately 40% of the outstanding shares of common stock of the post combination company as of closing. However, that ratio is subject to adjustment and determination of the final exchange ratio in accordance with the terms of the merger agreement.

Upon closing of the transaction, the combined company is planning to operate under the name XTI Aerospace, Inc. ("XTI Aerospace") and to trade on the Nasdaq Capital market under the symbol XTIA or other symbol to be announced. Inpixon's industrial RTLS solutions will be offered as a separate business line of XTI Aerospace, and XTI Aircraft Company will operate as a wholly owned subsidiary of XTI Aerospace.

In connection with the closing of the transaction, Nadir Ali and Wendy Loundermon are expected to resign as chief executive officer and chief financial officer of Inpixon. It is anticipated that XTI's current board member and chief financial officer, Scott Pomeroy, will become the chairman and chief executive officer of XTI Aerospace, with XTI founder David Brody becoming a member of the board of directors of XTI Aerospace. Michael Hinderberger will continue in his current role as chief executive officer of XTI Aircraft Company, leading the technical development of the TriFan 600. Soumya Das, the chief operating officer of Inpixon, will continue to lead the RTLS business line.

**About XTI's TriFan 600 VLCA**
The TriFan 600 is being developed by XTI Aircraft Company to combine the performance of a fixed-wing business aircraft with VTOL capability. XTI estimates that the TriFan will have a speed up to 345 mph and a range of 700 miles – both more than twice that of most civilian helicopters similar in size to the TriFan – thus creating a new "vertical lift crossover airplane" (VLCA) category. The TriFan 600's current worldwide addressable market is comprised of 58,000 turbine powered business aircraft (fixed-wing and rotorcraft). In addition, the company will target the emerging advanced air mobility (AAM) market. XTI is led by an experienced management team with a successful track record of bringing aircraft to market, and has secured patent protection in various countries, including the U.S., Canada, China, Japan, and Europe.
. . .

**XTI TriFan 600 highlights include these performance estimates and projections:**
- Speed up to 345 miles per hour, and range of 700 miles with vertical takeoff and vertical landing (extended range with a conventional takeoff or landing).
- The speed, range and comfort of a fixed-wing airplane combined with the point-to-point convenience of a helicopter.
- Will reduce travel time and operating expenses, while utilizing existing infrastructure including over 5,000 existing helipads in the U.S. alone, as well as driveways, back yards, job sites, private landing pads, remote locations -- wherever it's safe and legal.
- The flexibility to take-off like a helicopter, or like a conventional airplane if a runway is needed to reduce fuel use and extend range.
- Pilot plus up to six passengers in a spacious, comfortable cabin.
- Targeting a broad range of end users including business aircraft and helicopter operators, fractional operators, air medical operators, high-net-worth individuals, government, and military.
- The turbine engines currently planned for the TriFan 600 propulsion system will be capable of using sustainable aviation fuel, which the International Air Transport Association considers key to reducing the industry's carbon footprint.

- XTI's future plans include incorporating hybrid-electric or all-electric propulsion as these technologies mature and become commercially viable.

A computer graphics simulation video is available at XTI Aircraft simulation video.

The transaction has been unanimously approved by the Boards of Directors of Inpixon and XTI, and by XTI's controlling shareholders, and is subject to approval by Inpixon shareholders, as well as the satisfaction of customary closing conditions. The proposed merger is expected to be completed by the fourth quarter of 2023.

Maxim Group LLC is serving as exclusive financial advisor to Inpixon in connection with the transaction. Chardan Capital Markets LLC is serving as exclusive financial advisor to XTI on the transaction.

Additional details regarding the merger agreement can be found in Inpixon's 8-K to be filed with the Securities and Exchange Commission.

***The Materially Misleading and/or Incomplete Registration Statement***

24. On August 14, 2023, the Inpixon Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

25. Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose:

    a. Whether a committee of independent directors was created to run the sales process, and if so, the composition and powers of that committee. If no such committee was created, the Registration Statement fails to provide adequate explanation behind such a decision;

  b.  Whether the confidentiality agreements entered into by the Company with XTI differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

  c.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including XTI, would fall away; and

  d.  Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*<u>Omissions and/or Material Misrepresentations Concerning Inpixon Financial Projections</u>*

26. The Registration Statement fails to provide material information concerning financial projections for Inpixon provided by Inpixon management to the Board and GVS and relied upon by GVS in its analyses.

27. Notably, the Registration Statement reveals that as part of its analyses, GVS reviewed, "certain internal financial analyses, reports, preliminary internal market opportunity assumptions and other information concerning XTI prepared by the management of XTI."

28. The Registration Statement should have, but fails to provide, certain information in the projections that Inpixon management provided to the Board and GVS.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29. Significantly, the Registration Statement fails to provide any projection information, for XTI or the Company on a standalone basis, to the detriment of Plaintiff and other shareholders.

30. Specifically, the Registration Statement's failure to disclose any material projection data whatsoever, prevents Plaintiff from being fully informed as to the nature of the Proposed Transaction and preventing him from making a fully informed decision on whether to vote in favor of the same.

31. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

32. Without accurate projection data for Inpixon or XTI being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the value of the merger consideration, the accuracy of the GVS's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by GVS*

33. In the Registration Statement, GVS describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying

assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

34. With respect to the *Comparable Companies Analysis*, the Registration Statement fails to disclose:

    a. The specific multiple reference range utilized and the specific inputs and assumptions used to determine the same.

35. With respect to the *Selected Transactions Analysis*, the Registration Statement fails to disclose:

    a. The specific date on which each precedent transaction closed; and

    b. The specific multiple reference range utilized and the specific inputs and assumptions used to determine the same.

36. With respect to the *Relative Valuation Analysis*, the Registration Statement fails to disclose:

    a. The specific value of the implied contribution made by the holders of INPX Common Stock.

37. Additionally, it does not appear that GVS performed any in depth analysis of value for XTI such as a discounted cash flow valuation and provided only comparative analyses, rendering the information provided to Plaintiff less useful in determining the value of the Proposed Transaction as a whole and consequently, whether or not they should vote in favor of it.

38. Finally, it does not appear that any valuation analyses were done for the Company or the Pro-Forma entity.

39. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

40. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Inpixon stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

**(Against All Defendants)**

41. Plaintiff repeats all previous allegations as if set forth in full herein.

42. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

43. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

44. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

45. The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

46. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

47. The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

48. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

Case 4:23-cv-04330-KAW   Document 1   Filed 08/24/23   Page 14 of 16

# SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

49. Plaintiff repeats all previous allegations as if set forth in full herein.

50. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

51. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

52. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Inpixon's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information

- 14 -
COMPLAINT

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

53. The Individual Defendants acted as controlling persons of Inpixon within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Inpixon to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Inpixon and all of its employees. As alleged above, Inpixon is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 24, 2023

**BRODSKY SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

**OF COUNSEL**
Douglas Risen
Risen Law, LLC
1900 JFK Blvd., Suite 910
Philadelphia, PA 19103
Phone: 215.201.2824
drisen@comcast.net

COMPLAINT